Good morning. My name is Morgan King. May it please the court, I represent the defendants in this case. I want to start by saying that the case is not about the right of the United States government to assess or collect taxes. To me, what this case is about is what a litigant is supposed to be entitled to in litigation. Now, my argument is based on a premise that there are certain steps that must be taken and proven to establish that there's a valid assessment of the tax. It's premised on the first documented step, which is called a summary record of assessment, or the 23C. Without that document, my theory is that there cannot be a valid tax assessment. Ordinarily, the government is allowed to introduce computer printouts that represent what is in the 23C. And there is a presumption of correctness. But where the taxpayer can introduce evidence that there is either no 23C or it's defective, then that presumption vanishes. And what happened here in this case is that the litigant made every reasonable attempt, representing himself, nevertheless he made what I think are reasonable attempts to ascertain the existence of the 23C. And also his intention, I think we can infer, was to be able to examine it in a timely fashion to see if it was valid, if it was correct, technically. But the government did not produce those documents, even though they were requested. The evidence is that the taxpayer made several Freedom of Information requests, specifically referencing the 23C, and he testified that he didn't get those documents. Are you talking about the Form 4340? The Form 4340 would be a computerized summary of what's on the 23C. The 23C, or the summary record of assessment, is required by the Treasury regulations, and it's the first step in the assessment process, and I think it's a sine qua non of a valid assessment. In his Freedom of Information request, he asked specifically for the 23Cs, testified he did not get them. Well, this is not an appeal of a violation of the Freedom of Information. That's right, and the evidence was not introduced for that purpose. It was to introduce the government's knowledge of what he was looking for. Then in the litigation, he did a request for production. Being a layman and not an IRS employee, he wasn't sure that there was such a thing. He had heard about it. If it existed, he wanted it. So in his request for production, he simply asked for each and every document supporting the assessment. In my view, for the government not to recognize that the 23C is obviously in that category to me is unbelievable because it is the sine qua non of a valid assessment. It's the first documented step in the assessment process. Now, you're not contesting the amount of taxes owed. You're just contesting the procedure here. That's correct, but it's important because. And if you win, if it goes back, what does it do? Go back for a new trial? We haven't thought that far ahead, Your Honor. I mean, you have to go through the thing all over again, it looks like. That's true, but then we would have had time to have our own expert. Did you ask for continuance after you got these papers? I honestly don't recall. Well, because I think that the problem here is you did get the papers to your complaints. You got them. You did get the papers. Ultimately, your complaints about four or four or five days before trial. So your complaints, you got it, got them too late to use them properly in the trial. Right. That's correct. And that's why I wonder whether you asked for a continuance so you would have time. If you've gotten a continuance, it would have solved your problem. Yes, I believe I did. And I believe it was denied. Because I clearly recall making the argument that we didn't get it in time for our expert to look at it, even find an expert who understood how to interpret these documents. So I asked for my recollection is that I have to check the record. But my recollection is I asked for a continuance. It was denied. I then asked that the document be excluded. And my objection was overruled. The basis of the objection was that the request for production was too vague. But they didn't make file an objection to the request for production. So I believe they waived that objection. So therefore, the document should not have been introduced. And since it was the existence of it was requested and challenged by the taxpayer, I think the whole assessment process then falls because the foundation isn't there. It's this first documented step. And I, Your Honor, my position is, I mean, as the other counsel testified, I've been around for quite a while. I'm a blue collar lawyer. I appear in the state courts fairly frequently and occasionally in federal courts. And I know that every time I have tried to do what the IRS did in this case, I have been soundly reprimanded, admonished by the court. And usually my late documents are not allowed in the evidence. Was this a bench trial? This was a bench trial. And do you think if you got a new trial that the judge would make any ruling difference? You got some witness who might say whatever was put in was not official or was invalid or something like that? No, I can't say as I can right now. I mean, I'm just asking as a practical matter. I know you may have a point on appeal, but you might lose the battle anyway. That's good. We could live. Ultimately, if this were retried, I could lose the argument. But I want at least the opportunity to see if I can win the argument. Lose what argument? I'm sorry. Which argument? The argument that 23 C was not correct. See, this is what we were denied by. By bringing this to me four or five days before trial. But you've had the document now for a long time. I'm sorry. You've had it now for a long time. Oh, yes. But I couldn't introduce that at this stage. New evidence. Have you reviewed the document or had experts review it? And so that you believe now that the document is invalid and would leave to lead to a different result? No, Your Honor, I have not. But I think we should have had the opportunity to do that. I haven't because without knowing the results of this case, I don't want to waste the taxpayers or the client's funds on futile exercises just to see if, you know. Well, if we could have put on a case, we would have. If we had the opportunity to attack the validity of the 23 C, we could do it. Why should I go through that exercise? Well, this appeal is pending. It's not this. Is this a free appeal for your client? I'm sorry. A free appeal. No, no, no, no. This is not a free appeal. That might answer your question about why it might have been nice just to ask somebody whether this made any difference. But but, Your Honor, what, how? If I tried to introduce this subsequent information at this stage, I believe the court would not allow me to do that. I'm up for the court for you and your client's satisfaction to know that this is not an academic exercise. You're going to have to go back and tell him if you win this case and have to tell him now we've looked at the document. He's still going to lose. Will he be very happy with that news? Your Honor, there really are issues on two different levels here. The first issue is, was there a valid 23 C and therefore a valid assessment? But to me, as a practicing attorney, there's a more important issue. And that is, can the Internal Revenue Service get away with this kind of conduct? So the council for the IRS wrote a letter to the judge. It's in the record stating that they had produced all the relevant documents. And yet the most relevant document, which is the foundation for all valid assessments, was not produced. This council wrote the letter. It's in the record. It was a letter to the court. And my clients and I relied on the veracity of that statement, because it is not an offhanded statement by the attorney. He elaborates about all the things they've provided, what they have to provide, not provide, et cetera. And then come to find out at trial, they bring in an expert who says, oh, yes, there's a 23 C. We all know about it. It's been around for a long time. It's easy to obtain. It's not easy to interpret. At that point in the trial, did you ask the court for a little more time to get your expert? Since it's a bench trial, you don't have the urgency as you have with a jury. I understand that, Your Honor. The tone of the colloquy between myself and the judge made it clear to me in the context that she would not entertain any that she criticized me for continuing. I raised the objection three times that the 23 C should be objected. And she admonished me for doing that. She was she did not take repeated motions and references and objections very kindly. So I you know, I think when it becomes obvious to the attorney, that's kind of futile to to annoy the trial judge. He should really shut up about it, which is eventually what I did, because it was obvious to me she was going to have this trial. And she was going to do it by admitting the 23 C in the evidence. Can I ask just a practical question? Yes. You seem like a very practical person to me. I try to be, Your Honor. Is the interest clock running on this? Yes, it is, Your Honor. But I we stipulated that there was an amount owed. And is the interest running on that? I believe it is. The longer your client, the longer judgment day, if you will, is avoided, the larger that numbers will be. Well, as a practical matter, Your Honor, the figure is already way too high for him to ever pay it. So it's that's an academic point in a way. Discharge it in bankruptcy, right? No, because in order to be dischargeable in Chapter seven bankruptcy, he had to have filed his tax returns for the relevant years, which he did not do. In order to be dischargeable in Chapter 13, the amount of unsecured tax did not exceed $290,000. It sounds like you've been in bankruptcy. It's one of my specialties. I've written a number of books on it. Why prolong this? Your Honor, I understand you want to make a point the government ought to turn square corners and all of that. And you have two former United States attorneys up here who believe that. Yes. But why prolong this? Your Honor, in what manner am I prolonging it? I don't understand the question. There's nothing he can do in bankruptcy. He can't afford to pay it. Let's assume that the 23C, this is the thing that gets filed in the Secretary of Treasury's office? That's correct. Okay. Let's assume it's valid. If we assume it's valid, then we are going through a need. Right. I'm sorry? School's out, right? That's correct. But you've now seen the 23C, haven't you? That's right, but I have not engaged in. Is there something wrong with it? I don't know because if you look at it in the exhibits, it's totally inscrutable to even an attorney who's not experienced within the Internal Revenue Service in their documentation and code system. Well, I agree with that. I think all this stuff that the IRS puts out is hard for anybody to decipher, but that doesn't mean that it's not admissible, obviously. Well, to me there's a double standard because I know I have been there. I have brought in documents and took the argument that the production of documents was too vague, and I have simply been overruled by the court and my documents have not been admitted. And I just cannot understand how in good faith in the spirit of discovery. Okay. And why is this important? Because of the obvious discrepancy in the power of these two parties. We have all the might and majesty of the United States government versus an individual. That's part of the system. Have you ever looked at the code to see what the statute of limitations is for suing the government if they owe you money, tax money, and haven't paid it? Do you know what the statute is? I don't know what the statute is. I've looked it up. It's six months. Do you know what it is if they come after you? It's six years. So what can we do? Your Honor, people have asked me. I used to do a lot of criminal defense. And people used to ask me, well, how can I represent a defendant who I know is guilty, the judge knows he's guilty, the prosecutor knows he's guilty, and it's all a big game to see if the jury is ever going to know whether the guy is guilty or not. And my argument has always been I'm not representing this individual. I'm representing the United States Constitution. There was a closing argument. See this? I think this is analogous to what's happening here. I remember doing a closing argument in a criminal case. The DA stood up and told the jury, you've been wondering what this empty chair is at the table next to me. He said, it's the citizens of the state of California who sit in that chair. I represent them. So I thought about that. When it was my time for rebuttal, I stood up and said, well, there's been an empty chair next to mine also. You know who's sitting there? Thomas Jefferson and the writers of the Constitution. Thomas Jefferson and the other writers of the United States Constitution. And this is how I feel, that to me, okay, I have a case where I'm taking up. Just for your information, Jefferson was in Paris during the Philadelphia Convention. I was just seeing if you were alert, Your Honor. Well, I stated, but he did author part of it, I believe. Well, I don't think we're going to settle on that. Okay, well, in any event, in any event, I have another case, another analogy, Your Honor, why I feel this is an important issue at this level. I have taken on the case where I have sued the county of San Francisco and the county of Alameda and a private mining company. The initial appearance, six of their lawyers came in all in black suits, county lawyers, mining company lawyers. You only got one in a black suit today. And myself. Later, a reporter called me and said, how did you feel about going up against all of this power as a sole practitioner? My answer was the law is a great leveler. It's supposed to put us on an even ground. Those are the rules we're all supposed to follow. I think you're about to get leveled because you're going to save the rest of your time for rebuttal. Yes, thank you. Okay. And the next time you make that argument, use Madison. May it please the Court, Christopher LaRosa on behalf of the United States. I just make a couple of points, Your Honor. It takes a long to produce this stuff. Let me say a couple of things about that. The production requests that the taxpayers served in the case were very generic. They didn't identify the documents either by category or by name or in any other way. I think the first request was something to the effect of all documents that support, and then they would fill in the allegation of the complaint. It didn't say Form 23C. It didn't say Form 23C. It didn't say assessment records. It didn't say RACS 006, which is the new name for the form. He didn't identify the document in either of the motions to compel that were filed following what he perceived to be noncompliance with the production requests. At a time when the taxpayers were represented by counsel in March of 2000, they entered a stipulation providing for the complete resolution of their discovery disputes with the government without having received these documents. They did not at any time request an extension of the discovery period to seek additional discovery. They didn't ask for a continuance of the trial. They didn't ask for any remedy short of dismissal of the case, which they asked for two months before trial, and exclusion of the documents, which was the most extreme remedy they could have asked for. Counsel today said that there was a motion made to continue the trial. There was no written motion made, and there's nothing that I have found in the transcript of the pretrial conference or anywhere else that there was a request for a trial continuance. The first motion that they made, the discovery closed in April of 2000. There was a stipulation the previous month to the resolution of all discovery disputes. The next time we heard about, actually the first time we heard about these documents in the case, there were FOIA requests outside the case, but the first time we heard about these documents in the case was in November of 2001, two months before trial. That was the first time we had any indication at all that the taxpayers wanted these documents. And they didn't at that time in their motion ask for a reopening of discovery for the purpose of serving an additional production request. They didn't ask for it. When did you give them the documents? How far, how long before trial? We gave them the forms 23C, I think, July 8th or 9th, and the trial was July 14th. I'm sorry, January 8th or 9th, and the trial was January 14th. But, again, we didn't know that they wanted the documents until November, and it takes a little while to get these things. There are summary records of assessments, so they reflect all the assessments that are made by a particular IRS service center with respect to all taxpayers assessed on that day. It's like a log. It's like a log. But, in fact, it doesn't break down the taxpayers individually. It just shows aggregates. But it is something that has to be there. Pardon me? It is something that's required to be there, right? It's something that's required to be executed, yes, but it's not something that's readily available, and it's not something that is ordinarily part of an individual taxpayer's administrative file because it pertains to multiple taxpayers. And that's why at the inception of the – shortly after the taxpayer's first production request, we produced the entire non-privileged portion of the administrative file, but the administrative file in this case, as in most cases, did not contain the Form 23C. Is it something that's ordinarily put into evidence in a trial by the taxpayer? By the taxpayer? Or against the taxpayer? Against the taxpayer. No, it's not because the Form 4340 is normally what the government relies on. The Form 4340 reflects everything that the statutes and regulations require with respect to a tax assessment, which is just the name of the taxpayer, the date of the tax assessment, the character of the assessment, and the amount of the assessment. And that is, under the law of this circuit, is sufficient to sustain the government's initial burden of proof to show that the assessments were made and that they were properly made, and that's usually virtually always the only document the government puts in to satisfy that burden. And how far in advance of the trial was that produced? Well, those documents are generally not generated until – documents containing the same information were produced with the first – I mean, within six months of the time the case was filed, years before the trial. The Forms 4340 that were actually introduced were not produced until November of 2001, and the reason for that is that they are often – those forms are often generated right before the trial so that they reflect all of the payments. The Form 4340 is called the Certificate of Assessment and Payments, and so it will show both all the tax assessments that were made and it will show all the payments that were made that were credited toward those assessments. And in order to be – to try to make sure that the form captures all of the payments that were made more or less by the time of trial, we – the government will often have the form generated shortly before trial. But the assessment information on the form was produced years before. But that form was produced, what, about two months before trial? Yes, and the substance of the form – It wasn't given to the plaintiff's counsel. It was. The taxpayer's counsel. Yes, it was. All right. Thank you very much, Counsel. Thank you. Counsel for the government stated that we entered into some kind of a stipulation that all discovery issues had been settled, and that was sometime in the year 2000. To the extent that that is accurate, it was based on the fact that the letter to the judge from Mr. Denier, the counsel assistant to the United States Attorney for the Tax Division, was done in June of 1999. And in this letter, he states, the government submits that it has fully complied with the defendant's request for production of documents. And he says, the government delivered to defendants copies of all non-privileged documents. Well, there's nothing in the law that says that this is a privileged document. Now, let me ask you, these two forms we're talking about, these are kind of routine forms? I'm sorry? They're normal, regular forms? Yes, they are, except that – Did you know that you didn't have them when you entered into the stipulation that said you had everything? May I go off the trial record? We took some depositions, and Mr. Denier repeatedly stated there were no such thing. And I was quite astonished when four days before trial, he suddenly produces them. Well, the counsel just said this morning that the second one is one that's not generated until slightly before trial. So in that case, it was correct. It wasn't any then. It was something that was done later. No, no. The 23C was created when they alleged that the assessment took place years before. The other one is the one that he said is generated as close to trial as possible so that it will show the payments. The first document that has to be created is the 23C, and that's required by the Treasury regulations, and it states that that document has to identify who the taxpayer is, the type of tax, and all this kind of stuff. In every case, you know? In every case. Every assessment has to begin with a 23C. And then you knew you didn't have a 23C, although there is one in every case. I misunderstand what you mean by every case. In every case of assessment, in every assessment, it has to exist. I don't mean in every litigation case. Every case in which there has been an assessment. Had there been an assessment in this case? He's going to say that's what the 23C shows, right? Right. A valid and correctly executed 23C would show that there was an assessment. At least that's the first step. We also objected to another step later on. In all this discussion and discovery and all that, had there ever been any question about whether there was or wasn't an assessment? Did either side take a position? Did you ask whether there was?  And that means he has a right to look into whether all the steps were done properly. And I, in depositions with conversations with Mr. Denier at least two or three or four times, and we have the transcripts, but they're not introduced because my client lost the originals somewhere, so we weren't able to introduce them. But I will represent to this court that, and I can show the copies of the transcripts if there's any question. Mr. Denier responded to my question saying there is no such thing. He did this repeatedly. And then suddenly, four days before trial, he says, here are the 23Cs. And then I find out not only do they exist, but he brings in an expert who says, well, these are well-known. These have been well-known for years, and they're easy to get. And so there I am as a trial attorney thinking, well, you know, can the government get away with this? I mean, I can't. Your opponent says you didn't ask for a continuance. That could be, Your Honor. I will not represent to you that I asked for a continuance. It seems to me that I certainly would have in normal course. And I recollect that I – it seems to me I did. But I can't – I cannot represent as a fact that I asked for a continuance. Thank you. Thank you. The case to be adjourned will be submitted. The court will adjourn for the session.
judges: Reinhardt, Siler, Hawkins